## STATE OF NEW JERSEY IN THE INTEREST OF D. B. S., JUVENILE-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted December 2, 1975—Decided December 11, 1975.

Before Judges MATTHEWS, LORA and MORGAN.

*Mr. Stanley C. Van Ness,* Public Defender, attorney for appellant *(Mr. James K. Smith, Jr.,* Assistant Deputy Publib Defender, of counsel and on the brief).

*Mr. William F. Hyland,* Attorney General of New Jersey, attorney for respondent *(Mr. Daniel Louis Grossman,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

LORA, J. A. D. The juvenile, D. B. S., by petition J–257–73 filed on October 18, 1973, was charged with committing an act of juvenile delinquency, to wit, breaking, entering and larceny of items having a total value of $965 at a private residence within Fort Dix on August 30, 1973. On December 3, 1973 juvenile petition J–538–73 was filed, charging D. B. S. with committing other acts of juvenile delinquency on December 2, 1973 in Pemberton Borough, which included the taking of a motor vehicle without the owner's consent, operating the vehicle without a driver's license, in a reckless manner and at excessive speeds, and attempting to elude a police officer.

Following admissions to the petitions by D. B. S., the Juvenile Court judge entered adjudications of delinquency on the two petitions and sentenced him to a suspended indeterminate term at the State Training School for Boys at

Jamesburg and placed him on probation for two years with the recommendation that a volunteer probation counsellor be assigned to the case.

 D. B. S. contends, as he did below, that the courts of New Jersey have no jurisdiction over criminal acts committed within Fort Dix and hence the adjudication of delinquency on petition J–257–73 should be vacated. He relies on the general law of federal enclaves to support this contention. *U. S. Const.*, Art. I, § 8, cl. 17; 40 *U. S. C. A.* § 255; 18 *U. S. C. A.* § 13. See also, *N. J. S. A.* 52:30–1; *N. J. S. A.* 52:30–2 (general cession acts). Exclusive jurisdiction over Fort Dix was ceded to the United States on June 14, 1938. *L.* 1938, *c.* 354. Therefore, New Jersey has no jurisdiction to try crimes committed within that enclave. *State v. Morris*, 76 *N. J. L.* 222, 224 (Sup. Ct. 1908).

However, neither federal nor state law deem acts constituting juvenile delinquency to be crimes. *State v. Van Buren*, 29 *N. J.* 548 (1959); *Cotton v. United States*, 355 *F.* 2d 480 (10 Cir. 1966). Through the enactment of the Federal Youth Corrections Act, Congress has established procedures to deal with situations such as here involved. 18 *U. S. C. A.* § 5001 provides that whenever any person under 21 years of age has been arrested, charged with the commission of an offense punishable in any court of the United States, and after investigation it appears that such person has committed an offense or is a delinquent under the laws of any state which can and will assume jurisdiction over such juvenile and will take him into custody and deal with him according to the laws of such state, and that it will be to the best interest of the United States and of the juvenile offender, the United States Attorney of the district may forego his prosecution and surrender him to the jurisdiction of the state.

Analysis of 18 *U. S. C. A.* § 5032, both before and after its amendment on September 7, 1974, establishes that Congress intended to subject a juvenile to the jurisdiction of a state court if that state has jurisdiction over the juvenile,

will accept jurisdiction, and has available programs and services adequate for the needs of the juvenile.

It is clear that under the provisions of 18 *U. S. C. A.* § 13, the Assimilative Crimes Act, the juvenile D. B. S. is subject to punishment in the courts of the United States, and the New Jersey courts will not only assume jurisdiction over D. B. S. but have done so. Although the record does not affirmatively indicate that the federal authorities surrendered the juvenile, the act of the authorities of Fort Dix in bringing petition J–257—73 in our Juvenile Court is equivalent to the surrender contemplated in *Title* 18.

The New Jersey juvenile statutes contain no express provision with respect to the territorial extent of the Juvenile Court's jurisdiction. Rather, jurisdiction is expressed in terms of age limitations and proscribed actions. *N. J. S. A.* 2A:4–14, *N. J. S. A.* 2A:4–43 to 46 (amending the prior law).

Here, the juvenile was housed on a federal enclave but received his education in the public school system of New Jersey and benefited from the extracurricular activities provided by the school and the surrounding community. As stated in *State v. Tuddles,* 38 *N. J.* 565, 571 (1962), the legislative approach to juvenile delinquency is protective and rehabilitative, and not punitive. The statutory scheme is designed to permit the exercise of the powers of the State as *parens patriae,* for the purpose of rehabilitating youthful offenders and not of punishing them for the commission of a crime.

Accordingly, not only would it be inconsistent to hold that a juvenile who benefits from the State's educational system and community life cannot also benefit from its juvenile laws, but it is our view that the State has an obligation to protect and rehabilitate a juvenile such as D. B. S. who, although housed on land ceded to the Federal Government, is a member of the social community of New Jersey. *Cf. Burlington Cty. Freeholders v. McCorkle,* 98 *N. J. Super.* 451 (Law Div. 1968). So long as there is no inter-

ference with the jurisdiction asserted by the Federal Government, the State's jurisdiction continues. *In re Salem Transportation Co. of New Jersey*, 55 N. J. 559, 563 (1970).

We have reviewed the record and predisposition report and it is our conclusion there is no merit to the juvenile's contention that a term of probation is not warranted in this case.

Affirmed.